HORN, COMMISSIONER, PENNSYLVANIA DEPART-
MENT OF CORRECTIONS, ET AL. *v.* BANKS

No. 01–1385.   Decided June 17, 2002

PER CURIAM.

The Court of Appeals for the Third Circuit granted respondent federal habeas corpus relief from his death sentence. 271 F. 3d 527 (2001). Applying the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standard of review,[1] the Court of Appeals concluded that the Pennsylvania Supreme Court had unreasonably applied federal law in evaluating respondent's claim that his penalty phase jury instructions and verdict forms were improper under *Mills* v. *Maryland*, 486 U. S. 367 (1988). The Court of Appeals found it unnecessary to evaluate whether *Mills* applies retroactively to cases on habeas review per *Teague* v. *Lane*, 489 U. S. 288 (1989), because the Pennsylvania Supreme Court had not ruled on retroactivity. 271 F. 3d, at 541–543. In avoiding the *Teague* issue, the Court of Appeals directly contravened *Caspari* v. *Bohlen*, 510 U. S. 383 (1994), in which we held that federal courts must address the *Teague* question when it is properly argued by the government. We thus grant the petition for a writ of certiorari and reverse the Court of Appeals' determination that a *Teague* analysis was unnecessary.[2]

---

[1] Title 28 U. S. C. § 2254(d) was modified by AEDPA and now provides, in part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

[2] We also grant respondent's motion for leave to proceed *in forma pauperis*.

Respondent, George Banks, was convicted of 12 counts of first-degree murder stemming from a series of shootings on September 25, 1982. During the penalty phase of his trial, the jury was instructed, in part:

> "The sentence you impose will depend upon your findings concerning aggravating and mitigating circumstances. The Crime[s] Code in this Commonwealth provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstance or circumstances." *Commonwealth* v. *Banks*, 540 Pa. 143, 150, 656 A. 2d 467, 470 (1995).

In relevant part, the verdict form required the jury to check a box indicating that "[w]e the jury have found unanimously" either "[a]t least one aggravating circumstance and no mitigating circumstances," or "[o]ne or more aggravating circumstances which outweigh any mitigating circumstance or circumstances." 271 F. 3d, at 549–550. The jury marked the latter box, and also checked two other boxes indicating the aggravating circumstance (multiple offenses punishable by at least life in prison) and mitigating circumstance (extreme mental or emotional disturbance) that it had found. Respondent was sentenced to death on each count of first-degree murder.

After respondent's direct appeal was denied, we decided *Mills*, in which we held that the Constitution prohibits a State from requiring jurors unanimously to agree that a particular mitigating circumstance exists before they are permitted to consider that circumstance in their sentencing determination. 486 U. S., at 374. Subsequently, in state postconviction proceedings, respondent raised a *Mills* challenge to the jury instructions and verdict forms in his case, arguing that they improperly "suggested to the jury that its

findings as to mitigating circumstances must be unanimous." 540 Pa., at 149, 656 A. 2d, at 470. The Pennsylvania Supreme Court rejected his claim: "[B]oth the verbal instructions given by the court as well as the instructions printed on the verdict slips were correct and not impermissibly suggestive of a unanimity requirement with respect to mitigating circumstances." *Id.*, at 153, 656 A. 2d, at 471.

Respondent petitioned for federal habeas relief, which the United States District Court for the Middle District of Pennsylvania denied. 63 F. Supp. 2d 525 (1999). The District Court rejected respondent's *Mills* claim on the merits, applying the AEDPA standard of review articulated in 28 U. S. C. § 2254(d): "Supreme Court precedent . . . did not require an outcome contrary to that reached by the state courts." 63 F. Supp. 2d, at 544. Because the court found the AEDPA standard of review dispositive, it did "not address the parties' arguments concerning the retroactivity of *Mills*." *Ibid.*

The Court of Appeals for the Third Circuit reversed the District Court in part, granting respondent relief from his death sentence under *Mills*. The Court of Appeals first asked: "Are we compelled to conduct a retroactivity analysis under *Teague?*" 271 F. 3d, at 541. It recognized that, per *Teague*, retroactivity is a "'threshold question,'" but it found "*Teague* not to govern [its] analysis" in this case because "we do not need to focus on anything other than the reasoning and determination of the Pennsylvania Supreme Court," which had not ruled on retroactivity. 271 F. 3d, at 541, and n. 13.[3] It rejected petitioners' contention that the state court's failure to rule on retroactivity was irrelevant to whether *Teague* should apply in federal court:

---

[3] In deciding not to conduct a *Teague* analysis, the Court of Appeals "acknowledge[d] further that the Pennsylvania Supreme Court has specifically noted its skepticism regarding the retroactive application of *Mills*" and has disagreed with the Court of Appeals' resolution of *Mills* claims similar to respondent's. 271 F. 3d, at 542.

> "*Teague* teaches that the federal courts habeas corpus proceeding should be reluctant to apply new rules of federal jurisprudence in state court cases decided before such new rules were handed down. Principles of comity and finality counsel that we maintain a circumscribed scope of habeas review. . . Here, however as we have noted, the Pennsylvania Supreme Court applied *Mills.* We are examining the application of *Mills*, not because we wish to impose a new rule not considered by the Pennsylvania Supreme Court, but as the court in fact *did* consider and apply it. In such a situation, *Teague* is not implicated. Accordingly, we need ask only whether the Pennsylvania Supreme Court's application of *Mills* should be disturbed under the AEDPA standards." 271 F. 3d, at 543 (citation omitted).

Freed from performing a *Teague* analysis concerning *Mills'* retroactivity, a question which has created some disagreement among the Federal Circuits,[4] the Court of Appeals asked "whether the Pennsylvania Supreme Court determination regarding the constitutionality of the instructions, verdict slip, and polling of the jury involved an unreasonable application of *Mills.*" 271 F. 3d, at 544. It then found the state court's application of federal law unreasonable under the standards of 28 U. S. C. §2254(d), relying on both *Mills* and *Boyde* v. *California*, 494 U. S. 370 (1990). 271 F. 3d, at 551. The Court of Appeals explained that, "[c]onsidered as a whole, the jury instructions leave no doubt that 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.'" *Id.*, at 549 (quoting *Boyde, supra,* at 380).

---

[4] Compare *Gall* v. *Parker*, 231 F. 3d 265, 322 (CA6 2000) (*Teague* does not bar retroactive application of *Mills*), and *Williams* v. *Dixon*, 961 F. 2d 448, 456 (CA4 1992) (same), with *Miller* v. *Lockhart*, 65 F. 3d 676, 685–686 (CA8 1995) (*Teague* bars retroactive application of *Mills*), and *Cordova* v. *Collins*, 953 F. 2d 167, 173 (CA5 1992) (same).

Petitioners seek a writ of certiorari, arguing that the Court of Appeals erred by not performing a *Teague* analysis, by applying *Mills* retroactively to respondent's case, and by concluding that the state court's decision was unreasonable under *Mills*. We find it unnecessary to resolve the latter two of these claims, because we determine that the Court of Appeals committed a clear error by failing to perform a *Teague* analysis.

In *Teague*, we explained that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U. S., at 310.[5] And in *Caspari*, we held that "[a] threshold question in every habeas case, therefore, is whether the court is obligated to apply the *Teague* rule to the defendant's claim. . . . [A] federal court may, but need not, decline to apply *Teague* if the State does not argue it. But if the State does argue that the defendant seeks the benefit of a new rule of constitutional law, the court *must* apply *Teague* before considering the merits of the claim." 510 U. S., at 389 (citations omitted). Here, petitioners raised the *Teague* issue both in the District Court, see 63 F. Supp. 2d, at 544, and in the Court of Appeals, see 271 F. 3d, at 542–543. Thus, per *Caspari*, a case not cited in the opinion below, it was incumbent upon the Court of Appeals to perform a *Teague* analysis before granting respondent relief under *Mills*. The Court of Appeals erred in concluding that it did "not need to focus on anything other than the reason-

---

[5] We have recognized two exceptions to *Teague*'s rule. "The first exception permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the State to proscribe, . . . or addresses a 'substantive categorical guarante[e] accorded by the Constitution,' such as a rule 'prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Saffle* v. *Parks*, 494 U. S. 484, 494 (1990) (citations omitted). "The second exception is for 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.*, at 495.

ing and determination of the Pennsylvania Supreme Court." 271 F. 3d, at 541.

Although the Court of Appeals may have simply overlooked *Caspari,* its opinion can also be read to imply that AEDPA has changed the relevant legal principles articulated in *Caspari,* see 271 F. 3d, at 541, n. 13 ("We note, however, that recent decisions have called into question to what extent *Teague* has continued force independent of AEDPA"). While it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review set forth in 28 U. S. C. § 2254(d) ("[a]n application . . . shall not be granted . . . *unless*" the AEDPA standard of review is satisfied (emphasis added)), none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard, or that AEDPA relieves courts from the responsibility of addressing properly raised *Teague* arguments. To the contrary, if our post-AEDPA cases suggest anything about AEDPA's relationship to *Teague,* it is that the AEDPA and *Teague* inquiries are distinct. See, *e. g., Tyler* v. *Cain,* 533 U. S. 656, 669–670 (2001) (O'CONNOR, J., concurring) (construing successive application provisions of AEDPA, 28 U. S. C. § 2244(b)(2)(A)); *Williams* v. *Taylor,* 529 U. S. 362, 412–413 (2000) (construing § 2254(d)). Thus, in addition to performing any analysis required by AEDPA, a federal court considering a habeas petition must conduct a threshold *Teague* analysis when the issue is properly raised by the state.

We reverse the Court of Appeals' holding that "*Teague* is not implicated" by this case, 271 F. 3d, at 543, and remand for further proceedings consistent with this opinion.

*It is so ordered.*