Justice Thomas,
with whom Justice Scalia joins,
concurring.
I join the Court’s opinion. As the Court notes, the State has not argued that Teague v. Lane, 489 U. S. 288 (1989), forecloses Stumpf’s claim that the prosecution’s presentation of inconsistent theories violated his right to due process. Ante, at 182. With certain narrow exceptions, Teague precludes federal courts from granting habeas petitioners relief on the basis of “new” rules of constitutional law established after their convictions become final. 489 U. S., at 310 (plurality opinion). This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories. Moreover, it is “[a] threshold question in every habeas case ... whether the court is obligated to apply the Teague rule to the defendant’s claim,” and “if the State does argue *191 that the defendant seeks the benefit of a new rule of constitutional law, the court must apply Teague before considering the merits of the claim.” Horn v. Banks, 536 U. S. 266, 271 (2002) (per curiam) (internal quotation marks omitted). The State also has not argued that Stumpf procedurally defaulted his due process claim, even though it appears that Stumpf never presented this argument to the Ohio courts. Stumpf did not even raise the inconsistent-theories claim in his first federal habeas filings. See App. to Pet. for Cert. 134a-140a. Instead, the District Court raised the issue for Stumpf sua sponte, and ordered supplemental briefing on the point. See App. 97-98. The Court’s opinion does not preclude the State from advancing either of these procedural defenses on remand in support of Stumpf’s death sentence.
Moreover, I agree with the Court that “Stumpf has never provided an explanation of how the prosecution’s postplea use of inconsistent arguments could have affected the knowing, voluntary, and intelligent nature of his plea.” Ante, at 187. Similar reasoning applies to Stumpf’s sentence. Stumpf equally has never explained how the prosecution’s use of postsentence inconsistent arguments — which were based on evidence unavailable until after Stumpf was sentenced — could have affected the reliability or procedural fairness of his death sentence. At most, the evidence and purportedly inconsistent theory presented at Wesley’s trial would constitute newly discovered evidence casting doubt on the reliability of Stumpf’s death sentence, a sort of claim that our precedents and this Nation’s traditions have long foreclosed, see Herrera v. Collins, 506 U. S. 390, 408-417 (1993); id., at 427-428 (Scalia, J., concurring). The Bill of Rights guarantees vigorous adversarial testing of guilt and innocence and conviction only by proof beyond a reasonable doubt. These guarantees are more than sufficient to deter the State from taking inconsistent positions; a prosecutor who argues inconsistently risks undermining his case, for op *192 posing counsel will bring the conflict to the factfinder’s attention. See ante, at 188 (Souter, J., concurring) (noting that Wesley’s jury was informed that Stumpf had already been sentenced to death for the crime).