**Manuel FLORES, aka Manuel Gutierrez Flores, Petitioner,**

v.

**Roderick HICKMAN, et al., Respondents.**

**No. CV 06–4299–RSWL(RC).**

United States District Court, C.D. California.

Jan. 25, 2008.

Manuel Flores, Imperial, CA, Pro se.

Verna Wefald, Verna Wefald Law Offices, Pasadena, CA, for Petitioner.

Corey J. Robins, Office of Attorney General of California, Los Angeles, CA, for Respondents.

## ORDER ADOPTING AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

RONALD S.W. LEW, Senior District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Amended Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Amended Report and Recommendation is approved and adopted; (2) the Amended Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Amended Report and Recommendation and Judgment by the United States mail on the parties.

### JUDGMENT

IT IS ADJUDGED that the petition for writ of habeas corpus is denied and the action is dismissed with prejudice.

## AMENDED REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Amended Report and Recommendation[1] is submitted to the Honorable

1. The amendment to the Report and Recommendation is solely to correct a clerical error on page 18 of the initial Report and Recommendation.

Ronald S.W. Lew, Senior United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On November 17, 2003, in Los Angeles County Superior Court case no. BA249759, a jury convicted petitioner Manuel Flores, aka Manuel Gutierrez Flores, of one count of possession of a controlled substance in violation of California Health and Safety Code ("H.S.C.") § 11350(a) (count 4); however, the jury could not reach a unanimous verdict on the other charges against petitioner for attempted murder in violation of California Penal Code ("P.C.") §§ 664/187(a) (count 1), assault with a firearm in violation of P.C. § 245(a)(2) (count 2), carrying a loaded firearm in violation of P.C. § 12031(a)(2)(f) (count 3), and destroying evidence in violation of P.C. § 135 (count 5), and the trial court declared a mistrial as to those counts. Clerk's Transcript ("CT") 45–48, 164–68. On February 27, 2004, after a second trial, a jury convicted petitioner of counts 2 and 3, and as to count 2, the jury found petitioner personally inflicted great bodily injury upon Tameka Jackson within the meaning of P.C. § 12022.7(a) and petitioner personally used a firearm within the meaning of P.C. § 12022.5(a); however, once again, the jury could not reach a verdict on count 1.[2] CT 278–84.

On March 11, 2004, petitioner was sentenced on count 2 to the upper term of 4 years, plus 3 years under P.C. § 12022.7(a) and 10 years under P.C. § 12022.5(a), and on counts 3 and 4 to the upper term of 3 years on each count, to run concurrently, for the total term of 17 years in state prison. CT 285–89. In addition, the court ordered petitioner to make restitution to Tameka Jackson under P.C. § 1202.4(f) in the amount of $10,000.00. CT 286.

The petitioner appealed his convictions and sentence to the California Court of Appeal, which affirmed the judgment in an unpublished opinion filed June 8, 2005. Lodgments B–D. The petitioner then filed a petition for review in the California Supreme Court, which, on August 17, 2005, denied review "without prejudice to any relief to which [petitioner] might be entitled upon the finality of *People v. Black* (2005) 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 regarding the effect of *Blakely v. Washington* (2004) 542 U.S. [296], 124 S.Ct. 2531, [159 L.Ed.2d 403] and *United States v. Booker* (2005) 543 U.S. [220], 125 S.Ct. 738, [160 L.Ed.2d 621] on California law." Lodgments E–F.

### II

The California Court of Appeal, in affirming petitioner's convictions and sentence, made the following underlying factual findings:[3] Sometime after 6:00 a.m. on June 16, 2003, in Los Angeles, petitioner and a friend of Tameka Jackson's were fighting. The petitioner jumped at Jackson as if he were going to hit her, and another friend intervened. The parties subsequently dispersed.

Later, petitioner rode a bicycle to Jackson's location, pulled a gun from his waistband, and shot her in the face. About that time, Los Angeles Police Officer Joe Galindo was at the Greyhound Bus terminal in downtown Los Angeles when he heard a shot, looked in the direction of the sound, and saw several people pointing toward petitioner and indicating he had just shot

---

**2.** The prosecution dismissed count 5. CT 202.

**3.** *See* Lodgment D at 2–3.

someone. The petitioner was wearing a Pendleton jacket.

Galindo saw petitioner put a gun in his waistband, and Galindo pursued him. A man in a blue van drove Galindo during part of the pursuit. A man carrying a pipe in his hand, and a woman, also chased petitioner. The man carrying the pipe later told Galindo that petitioner was next to a trailer, and Galindo saw petitioner, still wearing the jacket, crouched behind a trailer. Galindo told petitioner to come out with his hands up, but petitioner fled into a warehouse and escaped. The warehouse was about two and a half blocks from the bus terminal.

About 6:00 a.m. on the above date, Jaime Pena was working at the warehouse when petitioner, wearing the Pendleton jacket, entered and asked if there were an exit in the back. Pena and others told petitioner to leave. Petitioner went upstairs, returned, and put on Pena's nearby jacket. The Pendleton jacket was later found in the warehouse.

About 6:00 a.m. on the above date, Melvin Carter called 911 from a telephone on Seventh Street and said that a young Mexican male had just shot a Black girl between Mills and Alameda "in front of the Greyhound." The dispatcher asked what the shooter was wearing, and Carter stated "[a] white—a ... with a shirt with a stripes and black pants. He was riding a bike, but we ... got the bike." Carter also said the shooter ran between trucks,

and that Galindo was following in a turquoise van. Carter helped direct emergency vehicles to the scene.

On June 19, 2003, petitioner was in a tent near Santa Fe and Fourth Street. The petitioner left and began riding a bicycle. However, when petitioner saw police officers, he fled on foot, discarded cocaine base, and was arrested.

### III

On July 7, 2006, petitioner, proceeding pro se, filed the pending petition for writ of habeas corpus under 28 U.S.C. § 2254, and on August 30, 2006, respondent filed an answer. On September 15, 2006, petitioner filed a reply or traverse.

The petitioner raises the following claims in his habeas corpus petition:

Ground One—"The imposition of an upper term sentence violated *Blakely v. Washington* and U.S. Constitution 6th Amend. (Right to jury) and 14th Amend. (Due Process)." (Petition at 6).[4]

Ground Two—The trial court's "[e]rroneous admission of hearsay testimony violated the confrontation clause of the 6th Amend. to the U.S. Constitution." (*Id.*)

Ground Three—"Restitution Fine violates the Due Process Clause of the 14th Amend. of the U.S. Constitution." (Petition at 7).

---

4. On May 9, 2007, this Court issued an Order to Show Cause "why this Court should not find Ground One to be unexhausted" due to petitioner's failure to raise Ground One in the California courts post-*Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), "an intervening change in the law that overruled the California Supreme Court's decision in [*People v. Black*, 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005)]," and appointed counsel for petitioner "for the limited purpose of responding to this Court's

Orders to Show Cause and to appeal, if necessary, the rulings on those Orders." *Flores v. Hickman*, 489 F.Supp.2d 1097, 1100 (C.D.Cal.2007). On May 24, 2007, respondent filed a response to the Order to Show Cause, and petitioner filed his response on September 6, 2007. Since both parties believe it would be futile for petitioner to attempt to further exhaust Ground One in the state courts, this Court will not order such exhaustion, and the Order to Show Cause is deemed discharged.

**1074**

## DISCUSSION

### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without comment or citation to authority. *Gaston v. Palmer*, 417 F.3d 1030, 1038 (9th Cir.2005), *amended by*, 447 F.3d 1165 (9th Cir.2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir.2007) (en banc). Thus, in addressing petitioner's claims, this Court will consider the reasoning of the California Court of Appeal, which issued a written decision addressing them. *Parle v. Runnels*, 505 F.3d 922, 926 (9th Cir.2007); *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc), *cert. denied*, —— U.S. ——, 128 S.Ct. 532, 169 L.Ed.2d 371 (2007).

### V

In Ground One, petitioner claims the trial court violated *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and petitioner's Sixth and Fourteenth Amendment rights to a jury trial and due process of law "by imposing an upper term based on its own findings of aggravating facts...." Petition at 6, Attachment at 6–9. The petitioner contends that since "the middle is the presumptive sentence under California's Determinate Sentencing Law [DSL] and a defendant may only receive an upper term if 'aggravating circumstances' are found, the California sentencing scheme for judicial determination of those facts under a preponderance standard suffers from the same constitutional defects as the Washington regime reviewed in *Blakely*." Petition, Attachment at 8.

The California Court of Appeal made the following factual findings underlying this claim:

> The preconviction probation report prepared for a September 2003 hearing reflects that on May 20, 2003, [petitioner] was convicted of concealing a firearm on his person (Pen.Code, § 12025, subd. (a)(2)). At sentencing in the present

case, the court observed that [petitioner] had a "propensity for guns[ ]" and recently had been convicted of possession of a concealed firearm. [Petitioner's] counsel indicated he was aware of the prior conviction but "wasn't going to bring it up." The court stated [petitioner] was "on probation for that[,]" and [petitioner] acknowledged that that was true. [Petitioner] indicated he thought the prosecutor was going to mention the prior conviction but the prosecutor did not do so. The court later said, "Well, it's so glaring, it need not even be mentioned so in passing." (*Sic.*) [¶] The court commented that [petitioner] should have been convicted of attempted murder in the present case, and his assault on Jackson was inexplicable and vicious. The court stated "it's just mind boggling to me that he would do such a thing especially understanding fully that he was under a proscription as far as possessing firearms is concerned. **He was on probation for that same offense.**" The court noted [petitioner] apparently posed a significant danger to society, apparently had an affinity for guns and violence, and was ready to commit whatever callous or vicious act came to his mind. The court also noted Jackson was completely defenseless and [petitioner] chose to shoot her in the face. [¶] The court found as aggravating factors that **the crime involved great violence, great bodily harm, a threat of great bodily harm** or other acts disclosing a high degree of cruelty, viciousness, or callousness; [petitioner] **was armed with or used a weapon at the time of the commission of the crime;** the victim was particularly vulnerable; [petitioner] **was convicted of another crime for which a consecutive sentence could have been imposed but the court was electing not to impose such a sentence;** the manner in which the crime was carried out indicated planning, sophistication, or professionalism; [petitioner] had engaged in violent conduct which indicated a serious danger to society; and he **was on probation or parole when the crime was committed.** [¶] The court also commented that the fact that [petitioner] fled after realizing he had inflicted a very serious injury upon Jackson indicated a further degree of callousness. The court imposed the four-year upper term on count two, plus three years pursuant to Penal Code section 12022.7, subdivision (a). [¶] The court then stated, "And pursuant to [the Penal Code section] 12022.5, subdivision (a) [allegation, the court] also elects the high base term for the following reasons: [¶] The [petitioner] has engaged in violent conduct which indicates a serious danger to society; [¶] **The [petitioner] was on probation or parole when the crime was committed. [¶] And the court incorporates by this reference the other factors in aggravation previously mentioned for the record.**" (Bracketed material added.) [¶] The court added, "To the extent that there would be any argument that the court is using for more than one purpose the factors in aggravation for enhancing the sentence, the court points out that there are numerous factors in aggravation any one of which in the court's opinion a nd given the fact that there are no factors in mitigation that the court could find justify the imposition of high term." (*Sic.*) [¶] As to count two, the court sentenced [petitioner] to prison for 17 years. The court imposed concurrent four-year upper terms on counts three and four, and stated, "the court also by this reference in selecting the high base term incorporate[s] the factors in aggravation previously mentioned." [Petitioner's] total sentence was 17 years in prison.

Lodgment D at 4–6 (emphasis added, footnote omitted). The California Court of Appeal then denied petitioner's *Blakely* claim, holding:

> [Petitioner] claims imposition of upper terms on count two and the firearm enhancement pertaining to that count violates *Blakely* .... We disagree. [¶] In *Blakely,* the Supreme Court stated, "This case requires us to apply the rule we expressed in *Apprendi* ...: 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" The Supreme Court also stated, "Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." **[¶] During sentencing, the court relied on the aggravating factor that [petitioner] was on probation or parole when the crime was committed. This aggravating factor presupposed a prior conviction; thus, the court, relying on the aggravating factor, necessarily relied on the predicate prior conviction. In fact, during sentencing argument, the court expressly referred to the prior conviction and the fact that [petitioner] was on probation as a result of the prior conviction. The court observed that the prior conviction was "so glaring it need not even be mentioned...." Accordingly, the upper terms on count two and the firearm enhancement pertaining to that count were supported by a factor, the fact of a prior conviction, that,** under *Blakely,* **did not have to be found by a jury beyond a reasonable doubt. ...**

Lodgment D at 6–7 (citations and footnote omitted; emphasis in original; bold emphasis added).

In *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court overturned a sentencing scheme that allowed a state court judge to enhance a defendant's penalty beyond the statutory maximum, concluding that "[o]*ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362–63 (emphasis added). Subsequently, in *Blakely,* the Supreme Court applied *Apprendi* and held unconstitutional a defendant's 90–month sentence for second-degree kidnapping with a firearm, which was a class B felony under Washington law, which provided that "[i]f no facts beyond those reflected in the jury's verdict were found by the trial judge, a defendant could not receive a sentence above a 'standard range' of 49 to 53 months." *Cunningham,* 127 S.Ct. at 864 (citing *Blakely,* 542 U.S. at 299–300, 124 S.Ct. at 2535). Washington law permitted, but did not require, a judge to exceed that standard range if it found "'substantial and compelling reasons justifying an exceptional sentence.'" *Id.* at 864–65, 127 S.Ct. 856 (citing *Blakely,* 542 U.S. at 299–300, 124 S.Ct. at 2535). Further, Washington law "set out a nonexhaustive list of aggravating facts on which such a sentence elevation could be based. It also clarified that a fact taken into account in fixing the standard range—*i.e.,* any fact found by the jury—could under no circumstances count in the determination whether to impose an exceptional sentence." *Id.* at 865 (citing *Blakely,* 542 U.S. at 299–300, 124 S.Ct. at 2535). Under these

circumstances, the Supreme Court concluded "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303, 124 S.Ct. at 2537 (emphasis in original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 303–04, 124 S.Ct. at 2537 (emphasis in original).

In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court applied *Blakely* to determine the Federal Sentencing Guidelines unconstitutional because they required a trial court to enhance sentences based only on the judge's determination of a fact that was not found by a jury or admitted by the defendant. *Id.* at 233–44, 125 S.Ct. at 749–56. In so doing, the Supreme Court stated:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Id.* at 233, 125 S.Ct. at 750.

Most recently, in *Cunningham*, the Supreme Court held California's Determinate Sentencing Law ("DSL") violates a defendant's right to trial by jury under the Sixth and Fourteenth Amendments by placing the finding of facts to elevate a sentence within the judge's province. *Cunningham*, 127 S.Ct. at 860, 871. In reaching this decision, the Supreme Court provided the following overview of California's DSL:

> For most offenses, ... the DSL regime is implemented in the following manner. The statute defining the offense prescribes three precise terms of imprisonment—a lower, middle, and upper term sentence. Penal Code § 1170(b) ... controls the trial judge's choice; it provides that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." "[C]ircumstances in aggravation or mitigation" are to be determined by the court after consideration of several items: the trial record; the probation officer's report; statements in aggravation or mitigation submitted by the parties, the victim, or the victim's family; "and any further evidence introduced at the sentencing hearing." [¶] The DSL directed the State's Judicial Council to adopt Rules guiding the sentencing judge's decision whether to "[i]mpose the lower or upper prison term." Restating [P.C.] § 1170(b), the Council's Rules provide that "[t]he middle term shall be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation." "Circumstances in aggravation[ ]" ... means *facts* which justify the imposition of the upper prison term." Facts aggravating an offense, the Rules instruct, "shall be established by a preponderance of the evidence," and must be "stated orally on the record."

*Id.* at 861–62 (citations and footnotes omitted). The Supreme Court noted "California's DSL, and the rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself

finds and places on the record facts—whether related to the offense or the offender—beyond the elements of the charged offense." *Id.* at 862. The Supreme Court then held that "[b]ecause circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, the DSL violates *Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Id.* at 868 (citations omitted).

**Teague Doctrine:**

As an initial matter, respondent contends in his answer that applying *Cunningham* to petitioner's sentence, as petitioner desires, would constitute a new procedural rule that, under *Teague*,[5] cannot be used to grant petitioner habeas relief. Answer at 6:17–12:7.

■ The *Teague* doctrine is a "nonretroactivity principle" that "prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); *Horn v. Banks,* 536 U.S. 266, 271, 122 S.Ct. 2147, 2150, 153 L.Ed.2d 301 (2002) (*"Banks I"*). If the *Teague* doctrine is "properly raised by the state," a federal court must conduct a threshold *Teague* analysis prior to considering the merits of a petitioner's claim. *Banks I,* 536 U.S. at 272, 122 S.Ct. at 2151; *Bohlen,* 510 U.S. at 389, 114 S.Ct. at 953.

■ In the *Teague* context, "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the funda-

mental fairness and accuracy of the criminal proceeding." *Whorton v. Bockting,* —— U.S. ——, 127 S.Ct. 1173, 1181, 167 L.Ed.2d 1 (2007) (citations and internal brackets and quotation marks omitted); *Schriro v. Summerlin,* 542 U.S. 348, 351–52, 124 S.Ct. 2519, 2522–23, 159 L.Ed.2d 442 (2004). Thus, "[u]nder *Teague,* the determination whether a constitutional rule of criminal procedure applies to a case on collateral review involves a three-step process." *Beard v. Banks,* 542 U.S. 406, 411, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004) (*"Banks II"*); *Bohlen,* 510 U.S. at 390, 114 S.Ct. at 953. "First, the court must determine when the defendant's conviction became final." *Banks II,* 542 U.S. at 411, 124 S.Ct. at 2510; *Bohlen,* 510 U.S. at 390, 114 S.Ct. at 953. "Second, it must ascertain the 'legal landscape as it then existed,' and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule.... That is, the court must determine whether the rule is actually 'new.' " *Banks II,* 542 U.S. at 411, 124 S.Ct. at 2510 (citations omitted); *Bohlen,* 510 U.S. at 390, 114 S.Ct. at 953. "Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity." *Banks II,* 542 U.S. at 411, 124 S.Ct. at 2510; *Bohlen,* 510 U.S. at 390, 114 S.Ct. at 953.

■ "State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.' " *Banks II,* 542 U.S. at 411, 124 S.Ct. at 2510 (quoting *Bohlen,* 510 U.S. at 390, 114 S.Ct. at 953). Here, petitioner's conviction became final on November 15, 2005, ninety days after the California Supreme Court denied a petition for

---

5. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

review. 28 U.S.C. § 2101(d); Rules of the Supreme Court of the United States, Rule 13. *Apprendi, Blakely,* and *Booker* were all decided before petitioner's conviction became final on November 15, 2005; however, *Cunningham* was decided afterward, on January 22, 2007.

■ This Court must next determine whether the holding in *Cunningham* embodies a "new rule" of constitutional law. Within the meaning of *Teague,* a holding constitutes a new rule "if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.' " *Graham v. Collins,* 506 U.S. 461, 467, 113 S.Ct. 892, 897, 122 L.Ed.2d 260 (1993) (quoting *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070); *Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990). "The new rule principle ... validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Bockting,* 127 S.Ct. at 1181 (citations and internal quotation marks omitted); *Bohlen,* 510 U.S. at 395–96, 114 S.Ct. at 956.

■ Here, this Court determines *Cunningham* constitutes a "new rule" within the meaning of *Teague.* First, the holding in *Cunningham* is similar to the holdings in *Apprendi, Blakely,* and *Booker,* each of which announced a "new rule" for *Teague* purposes. *See United States v. Cruz,* 423 F.3d 1119, 1120–21 (9th Cir.2005) (per curiam) (*Booker* ), *cert. denied,* 546 U.S. 1155, 126 S.Ct. 1181, 163 L.Ed.2d 1138 (2006); *Schardt v. Payne,* 414 F.3d 1025, 1035–36 (9th Cir.2005) (*Blakely* ); *Cooper–Smith v. Palmateer,* 397 F.3d 1236, 1245–46 (9th Cir.) (*Apprendi* ), *cert. denied,* 546 U.S. 944, 126 S.Ct. 442, 163 L.Ed.2d 336 (2005). Moreover, those district courts that have considered this matter have uniformly determined *Cunningham* an-

nounced a new rule. *See,* e.g., *Fennen v. Nakayema,* 494 F.Supp.2d 1148, 1155–56 (E.D.Cal.2007); *Jordan v. Evans,* 2007 WL 2703118, *10–11 (S.D.Cal.); *Marquez v. Evans,* 2007 WL 2406867, *8–9 (N.D.Cal.); *see also State v. Frawley,* 143 N.M. 7, 172 P.3d 144, 157–58 (2007) (concluding its decision applying *Cunningham* is a new procedural rule that did not apply retroactively, stating "[o]ur holding today is based on *Cunningham,* ... which in turn is based on the *Apprendi–Booker–Blakely* line of cases. Our research has not disclosed a case where a court has given the *Apprendi–Booker–Blakely* line of cases retroactive effect in habeas proceedings").

Second, in dissenting in *Cunningham,* it was not apparent to Justices Alito, Kennedy and Breyer that the holding in *Cunningham* was dictated by then-existing precedent. *Bockting,* 127 S.Ct. at 1181; *Beard II,* 542 U.S. at 416, 124 S.Ct. at 2513. Specifically, the dissenters opined California's DSL was "indistinguishable in any constitutionally significant respect from the advisory Guidelines scheme that the Court approved" in *Booker,* and noted that every court of appeals to consider the issue post-*Booker* had held a district court in sentencing may rely on facts the trial judge found by a preponderance of the evidence. *Cunningham,* 127 S.Ct. at 873–81 & n. 4 (Alito, J. dissenting). Thus, the dissenters concluded that "[u]nless the Court is prepared to overrule the remedial decision in *Booker,* the California sentencing scheme at issue in this case should be held to be consistent with the Sixth Amendment." *Id.* These dissenting opinions strongly suggest *Cunningham* set forth a "new rule." *See,* e.g., *Banks II,* 542 U.S. at 415–16, 124 S.Ct. at 2512–13 (opinions of four dissenting justices demonstrate "reasonable jurists could have concluded" an opinion announced a new rule.).

Next, when the California Supreme Court considered the DSL post-*Blakely*, it noted "[t]he United States Supreme Court has not yet addressed a system that is comparable" to California's, and concluded the DSL "does not violate a defendant's right to a jury trial under the principles set forth in *Apprendi, Blakely*, and *Booker.*" *People v. Black*, 35 Cal.4th 1238, 1249–54, 29 Cal.Rptr.3d 740, 745–50, 113 P.3d 534 (2005), *vacated by*, —— U.S. ——, 127 S.Ct. 1210, 167 L.Ed.2d 36 (2007). Similarly, the New Mexico Supreme Court applied *Apprendi, Blakely*, and *Booker* to uphold its sentencing scheme, which allowed the trial court to "alter the basic sentence ... upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender." *State v. Lopez*, 138 N.M. 521, 528–35, 123 P.3d 754, 761–68 (2005), *overruled by, Frawley*, 172 P.3d at 157–58 (applying *Cunningham*, overruling *Lopez*, and concluding New Mexico's sentencing scheme is unconstitutional).

▮ In the third step, this Court must determine whether the *Cunningham* rule comes within either of the two exceptions to the *Teague* nonretroactivity doctrine: "First, the [*Teague* ] bar does not apply to [1] rules forbidding punishment 'of certain primary conduct [or to] [2] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Beard II*, 542 U.S. at 416–17, 124 S.Ct. at 2513; *Summerlin*, 542 U.S. at 351–52, 124 S.Ct. at 2522–23. The first exception is inapplicable to *Cunningham*, which announced a procedural rule that does not affect who or what type of conduct may be punished. *See Summerlin*, 542 U.S. at 352–54, 124 S.Ct. at 2523–24 (A rule "requiring a jury

rather than a judge find the essential facts bearing on punishment" is a "prototypical procedural rule[ ]" and such rules "do not produce a class of persons convicted of conduct the law does not make criminal...."); *Schardt*, 414 F.3d at 1036 ("*Blakely* allocated some of the decision-making authority previously held by judges to juries. It is therefore a procedural rule." (citation omitted)). "The second exception is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding[,]" *Beard II*, 542 U.S. at 417, 124 S.Ct. at 2513; *Bockting*, 127 S.Ct. at 1181, and a change in the law requiring a jury to make the factual findings on which an upper sentence is based, rather than a trial judge, does not announce a watershed rule. *Summerlin*, 542 U.S. at 355–58, 124 S.Ct. at 2524–26; *Schardt*, 414 F.3d at 1036. Thus, *Cunningham* "announced a new procedural rule that does not apply retroactively to cases already final on direct review." [6] *Summerlin*, 542 U.S. at 358, 124 S.Ct. at 2526; *Schardt*, 414 F.3d at 1034–36; *Fennen*, 494 F.Supp.2d at 1155–56.

**Merits:**

▮ Yet, this is not the end of the matter. Rather, this Court must consider petitioner's sentencing claim (Ground One) under *Blakely*, which was decided before petitioner's judgment became final. Under *Blakely*, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303, 124 S.Ct. at 2537 (emphasis in original). Under California's DSL, the middle term, not the upper term, is the

---

6. For AEDPA purposes, *Cunningham* is not a "clearly established rule" because it is a new rule under *Teague*. *See Schardt*, 414 F.3d at 1037 ("We have held that if a case creates a

new rule under *Teague*, then it is not a clearly established rule under 28 U.S.C. § 2254(d)(1)."); *Himes v. Thompson*, 336 F.3d 848, 855 n. 4 (9th Cir.2003).

relevant statutory maximum. *Cunningham*, 127 S.Ct. at 868. Nevertheless, "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." *People v. Black*, 41 Cal.4th 799, 813, 62 Cal.Rptr.3d 569, 579, 161 P.3d 1130 (2007); *People v. Osband*, 13 Cal.4th 622, 728, 55 Cal.Rptr.2d 26, 95, 919 P.2d 640 (1996), *cert. denied*, 519 U.S. 1061, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997). "Therefore, if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely*, the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum.' " *Black*, 41 Cal.4th at 813, 62 Cal.Rptr.3d at 579, 161 P.3d 1130; *Fuson v. Tilton*, 2007 WL 2701201, *18 (S.D.Cal.2007).

Here, the trial court relied upon several factors in sentencing petitioner to the upper term, including that petitioner was on probation or parole at the time the crimes occurred, which as the California Court of Appeal explained, presupposed a prior conviction—in this case for carrying a concealed weapon. *See* Reporter's Transcript ("RT") 1504:23–1505:4, 1507:27–28; Lodgment D at 6. Under *Apprendi*, this factor is explicitly excepted from the requirement that a jury consider facts that increase the penalty for a crime beyond the statutory maximum, *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63, and it is sufficient to expose petitioner to sentencing within the upper term, *Blakely*, 542 U.S. at 303–04, 124 S.Ct. at 2537; thus, petitioner's sentence does not violate the Sixth Amendment. *Jordan*, 2007 WL 2703118 at *11. Additionally, the jury specifically found petitioner inflicted great bodily harm on Jackson and petitioner was armed with a weapon when committing the crime. CT 280. Each of these factors is also sufficient to expose petitioner to sentencing within the upper term. *See* Cal.Rules of Court, Rule 4.421(a)(1–2) (2003) (aggrava-

ting circumstances include that: "[t]he crime involved ... great bodily harm" and "[t]he defendant was armed with or used a weapon at the time of the commission of the crime"). Similarly, the jury also convicted petitioner of a second felony for which he could have received a consecutive sentence, CT 281, and this factor, too, was sufficient to expose petitioner to sentencing within the upper term. *See* Cal.Rules of Court, Rule 4.421(a)(7) (2003) ("The defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed."). Since the jury established the foregoing aggravating factors without any findings of fact by the trial court, petitioner's upper term sentence does not violate the Sixth Amendment for these reasons, as well. *Fuson*, 2007 WL 2701201 at *18.

█ Thus, the California Supreme Court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d).

## VI

█ Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991); *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002); *King v. Lamarque*, 464 F.3d 963, 965 (9th Cir.2006). "[T]he procedural default doctrine is a specific application of the general adequate and independent state grounds doctrine." *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir.1994); *Fields v. Calderon*, 125 F.3d 757, 761–62 (9th Cir.1997), *cert. denied*, 523

U.S. 1132, 118 S.Ct. 1826, 140 L.Ed.2d 962 (1998). The procedural default doctrine "bar[s] federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman,* 501 U.S. at 729–30, 111 S.Ct. at 2554; *Hanson v. Mahoney,* 433 F.3d 1107, 1113 (9th Cir.), *cert. denied,* 547 U.S. 1080, 126 S.Ct. 2354, 165 L.Ed.2d 282 (2006). A state procedural rule is considered an independent bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985); *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983); *La-Crosse v. Kernan,* 244 F.3d 702, 704 (9th Cir.2001). A state procedural rule constitutes an adequate bar to federal court review if it was "firmly established and regularly followed" at the time it was applied by the state court. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991); *King,* 464 F.3d at 965. "A state ground is independent and adequate only if the last state court to which the petitioner presented the claim 'actually relied' on a state rule that was sufficient to justify the decision." *Carter v. Giurbino,* 385 F.3d 1194, 1197 (9th Cir. 2004), *cert. denied,* 543 U.S. 1190, 125 S.Ct. 1406, 161 L.Ed.2d 196 (2005); *Koerner v. Grigas,* 328 F.3d 1039, 1049–50 (9th Cir. 2003).

 Procedural default is an affirmative defense, *Gray v. Netherland,* 518 U.S. 152, 165–66, 116 S.Ct. 2074, 2082, 135 L.Ed.2d 457 (1996); *Insyxiengmay v. Morgan,* 403 F.3d 657, 665 (9th Cir.2005), and the burden is on the respondent to establish its applicability. *Insyxiengmay,* 403 F.3d at 665–66; *Bennett v. Mueller,* 322 F.3d 573, 585–86 (9th Cir.), *cert. denied,* 540 U.S. 938, 124 S.Ct. 105, 157 L.Ed.2d 251 (2003). However,

[o]nce the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, ... it is the State who must bear the burden of demonstrating that the bar is applicable.

*Bennett,* 322 F.3d at 586; *King,* 464 F.3d at 966–67.

 The respondent contends petitioner has procedurally defaulted Ground Two by failing to contemporaneously object on confrontation grounds in the trial court. Answer at 19:14–21:18. "To determine whether [petitioner's] claim [is] procedurally barred, [the Court] look[s] to the California Court of Appeal's opinion because it is the last reasoned state court opinion." *Vansickel v. White,* 166 F.3d 953, 957 (9th Cir.), *cert. denied,* 528 U.S. 965, 120 S.Ct. 400, 145 L.Ed.2d 312 (1999); *Nunnemaker,* 501 U.S. at 803, 111 S.Ct. at 2594. Here, the California Court of Appeal determined petitioner had waived Ground Two, his confrontation clause claim, because he did not raise it before the trial court. Lodgment D at 9. Before making this determination, however, the California Court of Appeal set forth the following facts and procedural history underlying petitioner's confrontation clause claim:

After the jury was sworn, the court and parties discussed the admissibility of a 911 tape proffered by the prosecutor. The prosecutor represented as follows. The tape was made by a "percipient witness" "to the event who calls 911 and he reports that a woman has just been shot, giving a brief description, says he's

following this person and is reporting what's happening as it's occurring and that's all recorded on the 911 call." The caller's statements were admissible under the hearsay exceptions for excitable utterances and spontaneous statements. The caller's voice was excited. It was "not like it's screaming, but it does appear that he's out of breath and more in tune[ ] of what's happening and reporting what's happening as opposed to listening to the operator...." (*Sic.*) The prosecutor did not know whether police talked with the caller on the day of the call. Attempts to secure the caller's attendance in court had been unsuccessful. [¶] **[Petitioner] objected that the tape was hearsay. [Petitioner] did not object that introduction of the tape into evidence violated his right to confrontation.** The parties submitted the matter and the court ruled the tape was admissible. [¶] Following opening statements, Katherine Kravitz, a Los Angeles Police Department police service representative, testified as follows. Kravitz was commonly known as a "911 dispatcher with L.A.P.D." She took emergency and nonemergency calls from the public and assigned the matters to officers. Kravitz sometimes spoke with other agencies while she was speaking with the caller. The "fire department [was] probably the biggest one," and sometimes sheriffs. [¶] The tape was played to the jury, and a transcript of the tape was admitted in evidence and given to the jury. The transcript reflects that an emergency operator, unidentified voices, and paramedics participated in the call. Kravitz testified she was the emergency operator. One voice was later identified in the transcript as the voice of Carter. Carter's statements are reflected in the Factual Summary, *ante.* The operator told Carter that she would connect him with paramedics and he should tell them where the victim

was. Carter did so. Kravitz testified she was coordinating with the fire department. [¶] During jury argument, [petitioner's] counsel urged, "I'm not going to sit up here and destroy what little credibility I may have with you by arguing that he didn't do it.... I'm not going to argue to you that there was some second person that came with my [client] and went the opposite direction ... while everybody else was chasing my client down the street." [Petitioner's] counsel, referring to Galindo and Pena, urged, "We have two people [with] no ax to grind pointing my client out. So I'm going to concede." [¶] [Petitioner's] counsel urged that the "crux" of his jury argument was that, two days after the incident, Jackson told police that "[petitioner] hit her in the side of the head with the gun. And it went off." [Petitioner's] counsel then urged, "That is what happened, folks." [Petitioner's] counsel later urged, "My client was pistol whipping Ms. Jackson. My client ... intended to pistol whip Ms. Jackson, but he did not intend to shoot her. You don't get that kind of an injury if you're intending to shoot and kill somebody. You get a through and through. [¶] Folks, that's it. In a nutshell. That is it."

Lodgment D at 7–9 (emphasis added); *see also* RT at 309:21–311:17. Based on these facts, the California Court of Appeal determined petitioner waived any claim under the confrontation clause, stating:

[Petitioner] waived the issue of whether introduction of the tape into evidence violated his right to confrontation, since he failed to object below on that ground. [¶] Moreover, even if the issue were preserved for review, to the extent [petitioner] claims *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354 [158 L.Ed.2d 177] (2004) (*Crawford*), mandates exclusion of Carter's statements, we reject

the claim, [ [FN3] ] Carter, not the police, initiated the 911 call to obtain assistance. Kravitz was determining the appropriate response, not conducting a police interrogation in contemplation of future prosecution. Carter made his statements as a citizen and, due to the stress of excitement, his statements were without reflection or deliberation. Therefore, *Crawford*, which applies only to testimonial statements, is inapplicable in this case.

[FN3] Respondent does not dispute Carter's unavailability or the absence of an opportunity for cross-examination of Carter.

[¶] Finally, there is no dispute that the 911 tape was relevant to the issues of whether Jackson was assaulted with a firearm, whether someone, at that time, carried a loaded firearm, and whether [petitioner] was the person who committed those crimes. However, there was ample direct and circumstantial evidence from Jackson, Galindo, and Pena that [petitioner] shot Jackson. [Petitioner's] jury argument was that he hit Jackson with a gun but it accidentally discharged, that is, he in effect conceded the issues to which the 911 tape was relevant. Any violation of [petitioner's] right to confrontation was not prejudicial under any conceivable standard. (Cf. *People v. Harrison*, 35 Cal.4th 208, 239–240, 25 Cal.Rptr.3d 224, 106 P.3d 895 (2005); *People v. Watson*, 46 Cal.2d 818, 836, 299 P.2d 243 (1956); *Chapman*

*v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).)

Lodgment D at 9 (some citations omitted).

■■■■ In denying Ground Two based on petitioner's failure to raise a contemporaneous confrontation clause objection at trial, the California Court of Appeal relied on a state procedural doctrine that was not interwoven with or dependent on federal law, *Ake*, 470 U.S. at 75, 105 S.Ct. at 1092; *Long*, 463 U.S. at 1040–41, 103 S.Ct. at 3476; *LaCrosse*, 244 F.3d at 704, and which was a "firmly established and regularly followed state practice" prior to petitioner's trial.[7] *See People v. Alvarez*, 14 Cal.4th 155, 186, 58 Cal.Rptr.2d 385, 403, 926 P.2d 365 (1996) ("It is, of course, the general rule . . . that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal." (citations and internal quotation marks omitted)), *cert. denied*, 522 U.S. 829, 118 S.Ct. 94, 139 L.Ed.2d 50 (1997); *People v. Pinholster*, 1 Cal.4th 865, 935, 4 Cal.Rptr.2d 765, 798, 824 P.2d 571 (1992) (same), *cert. denied*, 506 U.S. 921, 113 S.Ct. 338, 121 L.Ed.2d 255 (1992). Since respondent has raised the defense of an independent and adequate state procedural rule, *Paulino v. Castro*, 371 F.3d 1083, 1093 (9th Cir.2004), the burden shifts to petitioner "to place that defense in issue." *King*, 464 F.3d at 966–67; *Bennett*, 322 F.3d at 586. Here, petitioner has not done so;[8] therefore, petitioner has procedurally

**7.** The fact that the California Court of Appeal alternately decided this claim on the merits does not prevent this claim from being procedurally barred in federal court. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternate holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on feder-

al law."); *Bargas v. Burns*, 179 F.3d 1207, 1214 (9th Cir.1999) ("The state court concluded that petitioner procedurally defaulted—a state ground—and alternatively rejected petitioner's claim on the merits—a constitutional ground. The alternative federal law holding of the court in no way disturbs the independent state law ground for dismissal."), *cert. denied*, 529 U.S. 1073, 120 S.Ct. 1686, 146 L.Ed.2d 493 (2000).

**8.** The petitioner does not challenge either the adequacy or the independence of the contemporaneous objection rule. Instead, petitioner

defaulted Ground Two.

■ When a state prisoner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *Hanson*, 433 F.3d at 1114. Here, petitioner has not raised cause and prejudice for the procedural default and he does not claim the failure to consider Ground Two will result in a fundamental miscarriage of justice; therefore, Ground Two is procedurally defaulted. *Paulino*, 371 F.3d at 1093.

## VII

■ In Ground Three, petitioner attacks the trial court's imposition of a restitution order. However, in an analogous situation, federal courts have consistently held a federal inmate cannot challenge a restitution order under 28 u.S.C. § 2255 because the order does not affect the duration of the inmate's custody. *See,* e.g., *United States v. Thiele*, 314 F.3d 399, 400 (9th Cir.2002) ("Claims for other types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody."), *cert. denied*, 540 U.S. 839, 124 S.Ct. 99, 157 L.Ed.2d 72 (2003); *United*

*States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir.1999) ("[B]y its plain terms, § 2255 is available only to defendants who are in custody and claiming the right to be released."). Thus, Ground Three is not a cognizable federal habeas claim, and couching it as a due process claim does not avail petitioner. *See also Thiele*, 314 F.3d at 402 ("Nor does it matter that Thiele couched his restitution claim in terms of ineffective assistance of counsel."); *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (habeas petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process"), *cert. denied*, 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997).

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Amended Report and Recommendation; (2) adopting the Amended Report and Recommendation as the findings of facts and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

January 11, 2008.

---

attacks the California Court of Appeal's determination of waiver, arguing *Crawford* was not decided until after his trial and, in any event, the prosecution raised a confrontation clause issue in its own briefing. *See* Petition, Attachment at 13. However, in addressing petitioner's habeas corpus petition, this Court cannot consider whether the California Court of Appeal properly invoked the contemporaneous objection bar. *Estelle v. McGuire*, 502 U.S.

62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *see also Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir.) ("Federal habeas courts lack jurisdiction ... to review state court applications of state procedural rules."), *cert. denied*, 528 U.S. 845, 120 S.Ct. 117, 145 L.Ed.2d 99 (1999). Thus, petitioner has not rebutted respondent's affirmative defense that he procedurally defaulted Ground Two.