769 F.Supp.2d 1197 (2010)
Brian SINTAY, aka Brian Larry Sintay, Petitioner,
v.
Michael MARTEL, Respondent.
Case No. CV 08-7876-JVS (RC).
United States District Court, C.D. California.
October 26, 2010.
*1199 Barry O. Bernstein, Barry O. Bernstein Law Offices, Burbank, CA, for Petitioner.
Eric E. Reynolds, CAAGOffice of Attorney General of California, Los Angeles, CA, for Respondent.

JUDGMENT
JAMES V. SELNA, District Judge.
Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman.
IT IS ADJUDGED that the petition for writ of habeas corpus is denied and the action is dismissed with prejudice.
1) ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE; AND
2) ORDER DENYING CERTIFICATE APPEALABILITY
Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a de novo determination.
IT IS ORDERED that: (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.
This Court finds an appeal would not be taken in good faith, and that petitioner has not made a substantial showing that he has been denied a constitutional right, for the reasons set forth in the Report and Recommendation of the United States Magistrate Judge; accordingly, a certificate of appealability should not issue under 28 U.S.C. § 2253(c)(2) and Fed. R.App. P. 22(b). Slack v. McDaniel, 529 U.S. 473, 483, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); Mayfield v. Calderon, 229 F.3d 895, 900 (9th Cir.2000).
IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

*1200 REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE
ROSALYN M. CHAPMAN, United States Magistrate Judge.
This Report and Recommendation is submitted to the Honorable James V. Selna, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

BACKGROUND

I
On August 2, 2004, in Los Angeles County Superior Court case no. GA053276, pursuant to a plea agreement, petitioner Brian Sintay, aka Brian Larry Sintay, pleaded guilty to, and was convicted of, two counts of committing a lewd act on a child in violation of California Penal Code ("P.C.") § 288(a) (counts 1 & 2), five counts of oral copulation by a person over 21 with a child under the age of 16 in violation of P.C. § 288a(b)(2) (counts 3, 9-11 & 14), one count of sexual penetration of a person prevented from resisting by an intoxicating substance in violation of P.C. § 289(e) (count 5), two counts of use of a naked minor for sex acts in making a videotape in violation of P.C. § 311.4(c) (counts 8 & 16), and two counts of sexual penetration of someone under the age of 16 by a person over the age of 21 in violation of P.C. § 289(i) (counts 12 & 15), and he was sentenced to the total term of eighteen years in state prison.[1] Clerk's Transcript ("CT") 150-60; Reporter's Transcript August 2, 2004 ("RT 8/2/04") 4:8-18:8.
The petitioner appealed his convictions and sentence to the California Court of Appeal,[2] CT 161; Lodgment nos. 3-4, which affirmed the judgment in an unreported opinion filed October 27, 2005, 2005 WL 2789322. Lodgment no. 5. On November 22, 2005, petitioner, proceeding through counsel, filed a petition for review in the California Supreme Court, which denied review on January 4, 2006. Lodgment nos. 6-7.
The petitioner, still proceeding through counsel, filed a habeas corpus petition on June 27, 2006, in the Los Angeles County Superior Court, which denied the petition on January 3, 2007, Lodgment nos. 8-11; filed a habeas corpus petition on February 23, 2007, in the California Court of Appeal, which denied the petition on March 7, 2007, Lodgment nos. 12-13; and filed a habeas corpus petition on May 8, 2007, in the California Supreme Court, which denied the petition on June 25, 2008. Lodgment nos. 14-15.

II
The California Court of Appeal, in affirming petitioner's judgment, made the following factual findings:[3] Danielle M., 17 years old when she testified, was born in September 1986. She met petitioner and his wife Gina, who babysat Danielle, when she was 12. Danielle's mother had gone to school with Gina, and the families became friends. As early as the summer of 1999, petitioner started playing a game called "Truth or Dare" with Danielle and her sister Ashley H., who was four years younger *1201 than Danielle. Petitioner "had" them get naked and run around the room; then he had them lick each other's faces while he was wearing boxer shorts.
When the girls returned in 2000, petitioner did not have them play the same game again. In January 2002, petitioner drove the two girls from Big Bear to their home in Las Vegas. When their mother was gone and Ashley was in the shower, petitioner wrestled with Danielle on her brother's bed, rolling over each other. He then asked Danielle to call him at his house on a particular day.
On the designated day, about a week later, Danielle called petitioner and he initiated a conversation about "sexual things." He told her how to masturbate while they were on the phone; he gave her instructions to take off her pants and to finger herself in the vaginal area while they talked, and said he would do so at the same time.[4] Further, he talked to her about having sexual intercourse and made up sexual situations involving Danielle and sometimes his wife Gina.
Subsequent phone conversations with petitioner escalated from one a week to every other day between January and March 2002. Petitioner called Danielle on her cellular phone and communicated by email, describing petitioner and Danielle in sexual situations. Danielle wrote back with sexual content also.
On March 25, 2002, Danielle had been staying at her grandmother's house; after a phone call, her mother dropped her off at petitioner's home in Glendale. Petitioner brought out a joint and he and Danielle smoked marijuana. After Gina left for work, petitioner brought Danielle to his bedroom, laid her on the bed naked, and blindfolded her; he was also naked. He put her hand on his penis and she licked his penis.
The next morning, he woke up Danielle and brought her to his bedroom where his wife Gina was laying naked. At petitioner's direction, sexual activity occurred between Danielle and Gina and then petitioner joined with fingering and licking Danielle's vagina. He also told her to lick his penis. Petitioner then had intercourse with Gina and told Danielle to kiss him.
That night, Gina went to work and petitioner smoked marijuana with Danielle and gave her a White Russian and a beer. They then played Truth or Dare, the game petitioner had initially taught Danielle three years before. This time, part of the game involved Danielle's performing oral copulation on petitioner. Danielle became unconscious and did not remember anything else after she consumed the drinks.
On March 28, 2002, petitioner's birthday, Gina approached Danielle and they both put on costumes. Danielle wore see-through pants and a small shirt as her costume; Gina wore a skirt. They went to the living room and Gina removed petitioner's clothes. Gina and Danielle massaged petitioner's body, including his penis, with oil. Both performed oral copulation with him and petitioner put his finger in Danielle's vagina. When they attempted to have sexual intercourse, it was too painful for Danielle so they stopped.
The police were contacted by an attorney and Gina, after her relationship with petitioner ended. Gina found three videotapes, which she gave to Detective McEntarffer. One showed Danielle showering in petitioner's apartment on two occasions in March 2002. One recorded the actions in costumes, with actions just as Danielle had testified. In another, Danielle was sitting on a couch with her pants removed and covered with her shirt; she was then shown unconscious on the couch, fully *1202 nude, with someone digitally penetrating her over a four and one-half minute period. After that video went blank for 30 seconds, petitioner could be seen orally copulating Danielle, who was still unconscious. In that last tape, she never appeared fully conscious but at some point was standing in the space and "was moving extremely slow with her hands. She placed her hands on top of his head."[5] Danielle was not aware she was being videotaped.

III
On December 1, 2008, petitioner, proceeding through counsel, filed the pending habeas corpus petition under 28 U.S.C. § 2254, challenging his convictions on the sole ground that his "equal protection under the federal Constitution has been violated because the state criminal statutes... treat and punish adults of varying ages unequally and because the statutes differentiate types of sexual conduct based on moral reasons and impose different levels of punishment based on the type of sexual conduct committed." On April 2, 2009, respondent filed an answer to the petition, and on May 29, 2009, petitioner filed his reply.

DISCUSSION

IV
The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." Lockyer v. Andrade, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEPA, 28 U.S.C. § 2254(d) provides:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume the state court's determination of factual issues is correct, and petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e) (1).
The California Supreme Court addressed petitioner's claim when it denied his petition for review and habeas corpus petition without comment. Gaston v. Palmer, 417 F.3d 1030, 1038 (9th Cir.2005), amended by, 447 F.3d 1165 (9th Cir.2006), cert. denied, 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); Hunter v. Aispuro, 982 F.2d 344, 348 (9th Cir.1992), cert. denied, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir.2007) (en banc), cert. denied, 552 U.S. 1316, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, this Court will *1203 consider the reasoned decision of the California Court of Appeal denying petitioner's claim on the merits. Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir.2010); Vasquez v. Kirkland, 572 F.3d 1029, 1035 (9th Cir. 2009), cert. denied, ___ U.S. ___, 130 S.Ct. 1086, 175 L.Ed.2d 908 (2010).

V
Initially, the respondent argues that granting petitioner relief in this case would constitute a new procedural rule that, under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), cannot be used to grant habeas relief. Answer at 7:16-10:3. The Court disagrees.
Under the Teague doctrine, "an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." Whorton v. Bockting, 549 U.S. 406, 416, 127 S.Ct. 1173, 1180, 167 L.Ed.2d 1 (2007); Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004). "A holding constitutes a `new rule' within the meaning of Teague if it `breaks new ground,' `imposes a new obligation on the States or the Federal Government,' or was not `dictated by precedent existing at the time the defendant's conviction became final.'" Graham v. Collins, 506 U.S. 461, 467, 113 S.Ct. 892, 897, 122 L.Ed.2d 260 (1993) (quoting Teague, 489 U.S. at 301, 109 S.Ct. at 1070); Butler v. McKellar, 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990). "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Bockting, 549 U.S. at 416, 127 S.Ct. at 1180-81 (citations and internal brackets and quotation marks omitted); Summerlin, 542 U.S. at 351-52, 124 S.Ct. at 2522-23. The Teague doctrine, thus, is a "nonretroactivity principle" that "prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." Caspari v. Bohlen, 510 U.S. 383, 389, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); Horn v. Banks, 536 U.S. 266, 271, 122 S.Ct. 2147, 2150, 153 L.Ed.2d 301 (2002) ("Banks I").
If the Teague doctrine is "properly raised by the state," a federal court must conduct a threshold Teague analysis prior to considering the merits of a petitioner's claim. Banks I, 536 U.S. at 272, 122 S.Ct. at 2151; Bohlen, 510 U.S. at 389, 114 S.Ct. at 953; see also Arredondo v. Ortiz, 365 F.3d 778, 781-82 (9th Cir.) ("[A]t a minimum Teague should be identified as an issue (indeed, the first issue). . ., the new rule of constitutional law that falls within its proscription should be articulated, the reasons why such a rule would not have been compelled by existing precedent should be explained with particular reference to the appropriate universe of precedent, and an argument should be made why the rule contended for is not within one of Teague's exceptions."), cert. denied, 543 U.S. 892, 125 S.Ct. 102, 160 L.Ed.2d 156 (2004). "[T]he determination whether a constitutional rule of criminal procedure applies to a case on collateral review involves a three-step process." Beard v. Banks, 542 U.S. 406, 411, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004) ("Banks II"); Bohlen, 510 U.S. at 390, 114 S.Ct. at 953. "First, the court must determine when the defendant's conviction became final." Banks II, 542 U.S. at 411, 124 S.Ct. at 2510; Bohlen, 510 U.S. at 390, 114 S.Ct. at 953. "Second, it must ascertain the `legal landscape as it then existed,' and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. . . . That is, the court must determine whether the rule is actually `new.'" Banks II, 542 U.S. at 411, 124 S.Ct. at 2510 (citations omitted); Bohlen, 510 U.S. at 390, 114 S.Ct. at 953. "Finally, if the rule is new, the court must consider *1204 whether it falls within either of the two exceptions to nonretroactivity." Banks II, 542 U.S. at 411, 124 S.Ct. at 2510; Bohlen, 510 U.S. at 390, 114 S.Ct. at 953.
"State convictions are final `for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" Banks II, 542 U.S. at 411, 124 S.Ct. at 2510 (quoting Bohlen, 510 U.S. at 390, 114 S.Ct. at 953). Here, petitioner's conviction became final on April 4, 2006, ninety days after the California Supreme Court denied his petition for review. 28 U.S.C. § 2101(d); Rules of the Supreme Court of the United States, Rule 13.
The petitioner seeks to apply the Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), to invalidate several of his convictions. See, e.g., Petition at 12:14-18 ("Petitioner argues that sex is sex and to classify certain types of sexual conduct as criminal because of moral[-]based distinction violates the equal protection clause. Lawrence v. Texas, supra, 539 U.S. at 579, 123 S.Ct. 2472."), 17:5-11 ("Equal protection promises that all people similarly situated must be treated equally under the law, and to punish adults of varying ages differently cannot withstand constitutional muster. All adults who engage in the identical conduct must receive the identical punishment. Lawrence v. Texas, supra, 539 U.S. at 579, 123 S.Ct. 2472."). Since petitioner's conviction became final after Lawrence was decided, Lawrence does not constitute a new rule for Teague purposes.
But that is not the end of the inquiry. Rather, "it is necessary to inquire whether granting the [habeas] relief sought would create a new rule because the prior decision is applied in a novel setting, thereby extending the precedent." Stringer v. Black, 503 U.S. 222, 228, 112 S.Ct. 1130, 1135, 117 L.Ed.2d 367 (1992); see also Saffle v. Parks, 494 U.S. 484, 487-88, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990) ("As [the petitioner] is before us on collateral review, we must first determine whether the relief sought would create a new rule under [Teague]. If so, we will neither announce nor apply the new rule sought by [the petitioner] unless it would fall into one of two narrow exceptions."). The respondent contends that "granting relief on [petitioner's] claim would require that several new rules of constitutional law be announced," including "that the holding of Lawrence v. Texas, . . . extends to sexual molestation of minors." Answer at 8:19-28. The Court agrees. In Lawrence, the Supreme Court held the due process clause protects the rights of adults to engage in private consensual homosexual conduct. Lawrence, 539 U.S. at 577-78, 123 S.Ct. at 2483-84. However, the Supreme Court specifically limited its holding in Lawrence to consenting adults. See id. at 578, 123 S.Ct. at 2484 ("The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. . . . The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle." (emphasis added)). Given the limitations of Lawrence's holding, applying Lawrence in the manner petitioner seeksto invalidate statutes criminalizing an adult's sexual molestation of a minor would undoubtedly create a new rule under Teague. Anderson v. Morrow, 371 F.3d 1027, 1033 (9th Cir.2004); Styron v. Johnson, 262 F.3d 438, 453 (5th Cir.2001), cert. denied, 534 U.S. 1163, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002).
Nevertheless, "Teague's bar on retroactive application of new rules of constitutional criminal procedure has two exceptions." *1205 Banks II, 542 U.S. at 416, 124 S.Ct. at 2513; Bockting, 549 U.S. at 416, 127 S.Ct. at 1180-81. "The first exception permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the State to proscribe, or addresses a substantive categorical guarante[e] accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." Lambrix v. Singletary, 520 U.S. 518, 539, 117 S.Ct. 1517, 1530-31, 137 L.Ed.2d 771 (1997) (citations and internal quotation marks omitted); Banks II, 542 U.S. at 416-17, 124 S.Ct. at 2513. "The second exception is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Banks II, 542 U.S. at 417, 124 S.Ct. at 2513; Bockting, 549 U.S. at 417, 127 S.Ct. at 1181. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." Summerlin, 542 U.S. at 353, 124 S.Ct. at 2523. Clearly, Lawrence is a substantive rule, see Anderson, 371 F.3d at 1033 (In Lawrence, "[t]he Supreme Court did place `certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe....'" (citation omitted)); Muth v. Frank, 412 F.3d 808, 817 (7th Cir.) ("Lawrence is a new substantive rule and is thus retroactive."), cert. denied, 546 U.S. 988, 126 S.Ct. 575, 163 L.Ed.2d 480 (2005), and since petitioner seeks a substantive change in California law, rather than procedural change, his claim is not barred by Teague.[6]Bousley v. United States, 523 U.S. 614, 619-21, 118 S.Ct. 1604, 1609-10, 140 L.Ed.2d 828 (1998); see also Waldron v. United States, 172 Fed.Appx. 765, 766 (9th Cir.2006) ("[A] change to the scope and application of a substantive criminal statute... is not barred by Teague.").

VI
The Fourteenth Amendment's equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); Caswell v. Calderon, 363 F.3d 832, 837 (9th Cir.2004). Equal protection does not require that things that are different in fact be treated the same in law. Rostker v. Goldberg, 453 U.S. 57, 79, 101 S.Ct. 2646, 2659, 69 L.Ed.2d 478 (1981); Michael M. v. Superior Court, 450 U.S. 464, 469, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437 (1981). Rather, to raise an equal protection claim, a petitioner must allege he was similarly situated to others who received preferential treatment, Cleburne, 473 U.S. at 439, 105 S.Ct. at 3254; Fraley v. Bureau of Prisons, 1 F.3d 924, 926 (9th Cir.1993), and must also allege discriminatory motive or intent. McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir.1999), cert. denied, 528 U.S. 1086, 120 S.Ct. 814, 145 L.Ed.2d 685 (2000); Thomas v. Borg, 159 F.3d 1147, 1150 (9th Cir.1998), cert. denied, 526 U.S. 1055, 119 S.Ct. 1365, 143 L.Ed.2d 526 (1999).
Here, petitioner claims he was denied equal protection of the law because P.C. § 288a(b)(2)[7] and P.C. § 289(i)[8] impose *1206 unequal or more severe punishment on adults who are 21 years and older, than on those who are between 18 and 21, and because the statutes (for moral reasons) impose different punishments based on the nature of the adults' sexual conduct with the minors. There is no merit to this claim, as the California Court of Appeal determined.
The California Court of Appeal denied petitioner's equal protection claim that these statutes treated and punished adults of different ages unequally, stating:
[Petitioner] was 27 to 32 years old and Danielle was 12 to 15 years old when the [sexual] conduct occurred. In counts three, nine, ten, eleven and fourteen [petitioner] was charged with violation of Penal Code section 288a, subdivision (b)(2), a felony for participation in an act of oral copulation by any person over the age of 21 with a person under 16 years of age. Counts twelve and fifteen charged him with [violating] [P.C.] section 289, subdivision (i), a felony for any person over the age of 21 who participates in an act of sexual penetration with a foreign object with a person under the age of 16 years. . . . [¶] Because adults 21 years old are penalized much more severely than another adult 20 years old for identical conduct, [petitioner] claims that this classification of adults of different ages for committing identical conduct is not supported by any rational basis and does not serve a compelling state interest. Moreover, he contends that the charges further no legitimate state interest in justifying intrusion in a person's private life, especially since the particular sexual conduct was classified as criminal merely because of a moral based distinction, contrary to Lawrence v. Texas. . . . He argues that "sex is sex" and that classifying oral copulation and digital stimulation more seriously than statutory rape, which involves more serious penile sexual intercourse and is a wobbler and not a strike, with no lifetime sex offender registration, is a moral-based distinction that violates the equal protection clause. [¶] "Equal protection claims are subject to two different standards of review. `The strict scrutiny standard of review applies only if a legislative classification involves a suspect classification or significantly infringes upon a fundamental right.' If no suspect classification or fundamental right is involved, `we apply the rational basis test: are the challenged classifications "`rationally related to a legitimate governmental purpose'" ?'" [¶] Regarding the age of the offender, [petitioner] argues that the strict scrutiny standard of review applies because a defendant's fundamental right not to be incarcerated due to the classifications is at issue.... [Petitioner] does not dispute that the state has a right to establish laws to punish adults who engage in sexual conduct with children. His argument is that the state does not have the right to "punish at varying levels adults who have sexual conduct with children based strictly on their particular adult age. A child needs to be protected whether the child has sexual contact with an adult who is 20, 21, 28, or 50 years old." He contends there is no compelling state interest to distinguish punishment based on the particular age of the adult committing the sexual conduct. Furthermore, he argues the *1207 state cannot meet its burden of establishing not only its compelling interest but also that the distinctions drawn in the law are necessary to further its purpose. He cites Lawrence v. Texas. . . for the proposition that all adults who engage in the identical conduct must receive the identical punishment. [¶] The analysis in People v. Gonzalez (1978) 81 Cal.App.3d 274, 277-278, 146 Cal.Rptr. 417, approves such age distinctions in the prosecution of child molestation, even when applying a strict scrutiny analysis: "There is a compelling state, interest in the protection of children from sexual molestation by persons who are materially more mature. Undeniably, there is a greater likelihood that a young child will succumb to the sexual blandishment of one who is much older than that the child will do so when the conduct is solicited by one close to the child's own age. There thus exists a compelling state interest to classify as a special category sexual misconduct of a materially older person where the victim of the conduct is a young child. Classifications based upon the ages of the victim and the offender are necessary to carry out the state interest." [¶] "Once the strict scrutiny test is met so as to justify a classification, the precise parameters drawn by the classification need only be rationally related to the interest protected. It is a legislative and not judicial function to draw statutory dividing lines where the classification is constitutionally permissible. We thus conclude that Penal Code section 286, subdivision (c) withstands [petitioner's] constitutional challenge." [¶] "Our conclusion is buttressed by a close analysis of People v. Olivas [(1976)] 17 Cal.3d 236, 131 Cal.Rptr. 55, 551 P.2d 375, the decision which, applying the California Constitution, adopts the strict scrutiny test of classifications bearing upon personal liberty and in so doing reaches a result contrary to the federal cases which permit longer confinement for juveniles than for adults convicted of crimes based upon the same conduct." Olivas does not declare that the strict scrutiny test invalidates the classification between adults and youthful offenders created by the California statutory scheme. Rather, Olivas holds that while `the state has an interest in the rehabilitation of youthful offenders [it has] not been shown how [the] sentencing scheme [which permits an adult sentenced as a youthful offender to be confined longer than if he were sentenced as an adult] is necessary to further that interest. Assuming arguendo that rehabilitation is a compelling state interest, we cannot determine what minimum period of confinement is sufficient to achieve the state's goal of meaningful rehabilitation.' [¶] "In Olivas, the statute failed to meet constitutional standards because: (1) the statute was not necessary to protect the compelling state interest purported to be served by it; and (2) the classification made by the statute could not be rationally related to the state interest. In contrast, the case at bench presents a situation in which there is a compelling state interest in the protection of children from persons of greater age who would impose upon them. That interest in turn requires the definition of the age group to be protected and the age group from whom the children are to be protected. The definitions of age groups adopted by the Legislature are rationally related to the need to define and the state interest served."
* * *

*1208 [Petitioner's] reliance on Lawrence v. Texas, supra, is misplaced. In describing what that case did not decide, the Supreme Court started with children: "The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution.... The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle." (Lawrence v. Texas, supra, 539 U.S. 558, 578[, 123 S.Ct. 2472]. Italics added) [¶] Whether strict scrutiny or rational basis is the test employed, for the reasons stated in People v. Gonzalez, supra, 81 Cal.App.3d 274, 277-278, 146 Cal.Rptr. 417, we conclude the classifications by age in [P.C.] sections 288a, subdivision (b)(2), and 289, subdivision (i), pass constitutional muster.
Lodgment no. 5 at 5-10 (some citations omitted).
The California Court of Appeal also denied petitioner's claim that these statutes unequally distinguish the types of sexual conduct and severity of punishment based on the types of conduct, stating:
Again relying on Lawrence v. Texas, supra, 539 U.S. 558, 583[, 123 S.Ct. 2472], [petitioner] argues that the distinction between oral copulation ([P.C.] § 288a, subd. (b)(2)) and digital penetration ([P.C.] § 289, subd. (i)), which receive greater punishment than actual physical penile vaginal intercourse (Penal Code section 261.5) "is an artificially moral based distinction which has been recently overruled by the United States Supreme Court...." He emphasizes that certain adults, persons over 18, can be charged with statutory rape in violation of [P.C.] section 261.5 and receive probation; but, if that adult is older, the punishment is far more serious.[FN6] [Petitioner] argues that the health risks to the minor are far greater from intercourse than from mutual sexual touching.
[FN6] [P.C.] Section 261.5 penalizes unlawful sexual intercourse with a minor, a person under the age of 18 years. If the minor is not more than three years older or younger than the perpetrator, the offense is a misdemeanor. ([P.C.] § 261.5, subd. (b).) If the minor is more than three years younger than the perpetrator, the offense can be either a misdemeanor, with not more than one year in county jail, or a felony. ([P.C.] § 261.5, subd. (c).) If a person 21 or older engages in unlawful sexual intercourse with a minor under 16, the offense is also a wobbler, with not more than one year in county jail or imprisonment in the state prison for two, three or four years. ([P.C.] § 261.5, subd. (d).) By way of contrast, the oral copulation and sexual penetration crimes with which [petitioner] was convicted are automatic felonies because of the ages of the participants. ([P.C.] § 288a, subd. (b)(2) and 289, subd. (i).)
Justice O'Connor's concurring opinion in Lawrence v. Texas, supra, 539 U.S. 558, 582-583[, 123 S.Ct. 2472], emphasizes that moral disapproval of a group "is an interest that is insufficient to satisfy rational basis review under the Equal Protection Clause. See, e.g., Department of Agriculture v. Moreno, 413 U.S., at 534, 93 S.Ct. 2821; Romer v. Evans [(1996)] 517 U.S. [620,] 634-635, 116 S.Ct. 1620[, 134 L.Ed.2d 855]. Indeed, we have never held that moral disapproval, without any other asserted state interest, is a sufficient rationale under the Equal Protection Clause to justify a law that discriminates among groups of persons. Moral disapproval of a group cannot be a legitimate governmental interest under the Equal Protection Clause because legal classifications must not be `drawn for the purpose of disadvantaging the group burdened by the law.' Id., at 633, 116 S.Ct. 1620. Texas' invocation of moral disapproval as a legitimate state interest proves nothing more than Texas' *1209 desire to criminalize homosexual sodomy." [¶] The acts involved in the case at bench involve minors as victims, a category specifically not involved in Lawrence v. Texas, supra, 539 U.S. 558, 578[, 123 S.Ct. 2472]. The "group" punished by the challenged statutes consists of child molesters, not homosexual adults engaging in consensual acts. Moreover, we agree with the analysis in People v. Jones, supra, 101 Cal.App.4th 220, 228, 124 Cal.Rptr.2d 10, that the characterization of criminal acts is fundamentally for the Legislature. The court in Jones upheld the [P.C.] section 290 sex registration against an equal protection challenge based on the requirement that registration apply to [P.C.] section 288(b)(1) (oral copulation with person under the age of 18) but not necessarily to [P.C. §] 261.5(a) (unlawful sexual intercourse with a person under the age of 18), almost the same differentiation as in the case at bench. As in Jones, supra, and the other cases cited above leaving such distinctions to the Legislature, we conclude there is no violation of [petitioner's] equal protections rights.
Lodgment no. 5 at 11-12 (some footnotes omitted).
Initially, as discussed above, "a federal court may grant habeas relief on a claim `adjudicated on the merits' in state court only if the decision `was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Waddington v. Sarausad, 555 U.S. 179, 129 S.Ct. 823, 831, 172 L.Ed.2d 532 (2009); Mitchell v. Esparza, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003) (per curiam). "Section 2254(d)(1)'s `clearly established' phrase `refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Andrade, 538 U.S. at 71, 123 S.Ct. at 1172 (citation omitted). "In other words, `clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. at 71-72, 123 S.Ct. at 1172; Yarborough v. Alvarado, 541 U.S. 652, 660-61, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004). "If there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law." Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir.2004), cert. denied, 543 U.S. 1191, 125 S.Ct. 1408, 161 L.Ed.2d 197 (2005); Brewer v. Hall, 378 F.3d 952, 955 (9th Cir.), cert. denied, 543 U.S. 1037, 125 S.Ct. 814, 160 L.Ed.2d 602 (2004).
Here, petitioner relies on Lawrence to support his equal protection claims. However, as the California Court of Appeal recognized, Lawrence did not address the constitutionality of state statutes criminalizing sexual relations between adults and minors; thus, petitioner has not identified any clearly established Supreme Court precedent supporting his claims. See Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir.2010) (en banc) ("[W]hen a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case."); Muth, 412 F.3d at 817-18 (holding Lawrence did not proscribe Wisconsin's criminal incest statute, and determining "there was no clearly established federal law" supporting petitioner's claim that statute was unconstitutional). Moreover, petitioner's reliance on Supreme Court decisions broadly discussing the equal protection clause, Petition at 7:5-8:2 (citing City of Cleburne, 473 U.S. at 439, 105 S.Ct. 3249); Reply at 7:11-17 *1210 (same), does not avail petitioner.[9]See, e.g., Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009) ("[W]hen a Supreme Court decision does not `squarely address[] the issue in th[e] case' or establish a legal principle that `clearly extend[s]' to a new context to the extent required by the Supreme Court . . ., it cannot be said, under AEDPA, there is `clearly established' Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision." (citation omitted)).
Even setting aside the AEDPA issue, petitioner's equal protection claims are without merit, as the California Court of Appeal also determined. See, e.g., Ferris v. Santa Clara County, 891 F.2d 715, 718 (9th Cir.1989) (rejecting as "patently frivolous" a claim that P.C. § 288a(b)(1) violates equal protection and concluding statute is constitutional), cert. denied, 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990); People v. Gonzalez, 81 Cal.App.3d 274, 276-78, 146 Cal.Rptr. 417 (1978) (rejecting equal protection challenge to California statute differentiating punishments based on age of perpetrator and minor); State v. Walborn, 729 So.2d 504, 505-06 (Fla.Dist. Ct.App.1999) (holding Florida statute making it a crime for person 24 years or older to engage in sexual activity with 16 or 17 years old did not violate equal protection since "the age limitation . . . is not arbitrary when balanced against the goals of protecting minors from sexual exploitation"); State v. Munz, 355 N.W.2d 576, 585-86 (Iowa 1984) (rejecting claim that "it is irrational to permit a fourteen-year-old to have sex with a nineteen-year-old, but not with a twenty-year-old, or to punish a twenty-year-old for having sex with a fourteen-year-old, but not with a fifteen-yearold" and denying equal protection challenge to statute criminalizing sexual activity between a 14 or 15-year-old and a "person ... six or more years older"); State v. Elam, 302 N.C. 157, 162, 273 S.E.2d 661 (N.C.1981) (holding North Carolina statute proscribing indecent liberties with child, which "require[d] the defendant be over sixteen years of age and that there be a five-year difference between the age of the accused and the age of the victim, who must be less than sixteen[,]" did not deny equal protection of the law because "[t]he age classifications within the statute are reasonably related to the purpose of the statute, i.e., the protection of children from the sexual advances of adults").
For all these reasons, the California Supreme Court's denial of petitioner's equal *1211 protection claims was neither contrary to, nor an unreasonable application of, clearly established federal law.

RECOMMENDATION
IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.
NOTES
[1] The plea agreement afforded petitioner the 18 years sentence "instead of the maximum sentence of 32 years and six months to life the charges would [have] otherwise carr[ied]." Lodgment no. 5 at 2.
[2] In accordance with petitioner's plea agreement, the trial court issued a certificate of probable cause. CT 162-65; RT 8/2/04 16:28-17:2; Lodgment no. 5 at 2.
[3] Lodgment No. 5 at 3-5.
[4] She told him she would do so but did not.
[5] At some point, before the police reached her in Las Vegas and told her of the videos, petitioner told her that videos were taken of her but that he was afraid to get caught. He said a particular videotape was taken the night he gave Danielle the White Russian and beer and to lie and to tell the police she was tired that night.
[6] Having reached this conclusion, this Court need not address the second Teague exception.
[7] At the time of petitioner's offenses, P.C. § 288a(b)(2) provided that "[e]xcept as provided in [P.C.] Section 288, any person over the age of 21 years who participates in an act of oral copulation with another person who is under 16 years of age is guilty of a felony." P.C. § 288a(b)(2) (2002).
[8] At the time of petitioner's offenses, P.C. § 289(i) provided that "[e]xcept as provided in [P.C.] Section 288, any person over the age of 21 years who participates in an act of sexual penetration with another person who is under 16 years of age shall be guilty of a felony." P.C. § 289(i) (2002).
[9] Nevertheless, this does not mean that the Supreme Court must have decided the exact claim a habeas petitioner raises. See Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007) ("AEDPA does not `require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.' Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts `different from those of the case in which the principle was announced.' The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner." (citations omitted)); Musladin v. Lamarque, 555 F.3d 830, 839 (9th Cir.2009) ("AEDPA's `clearly established Federal law' requirement does not demand more than a `principle' or `general standard' in the Supreme Court's caselaw before habeas relief can be granted.' "). But the AEDPA clearly requires more than petitioner presents here. See, e.g., Thaler v. Haynes, ___ U.S. ___, 130 S.Ct. 1171, 1172-74, 175 L.Ed.2d 1003 (2010) (per curiam) (Batson's "general requirement" that "a judge ruling on an objection to a peremptory challenge to undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available ... did not clearly establish the rule" that "a judge, in ruling on an objection to a peremptory challenge under [Batson], must reject a demeanor-based explanation for the challenge unless the judge personally observed and recalls the aspect of the prospective juror's demeanor on which the explanation is based" (citations and internal quotation marks omitted)).